# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CURT A. SCHWAAR,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>    Defendant. | No. 05 C 6682<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Curt Schwaar (Plaintiff) challenges the final decision denying disability insurance benefits and supplemental security income disability benefits. The governing law is well-established and directs attention to whether the Commissioner used the correct legal standards and applied them to findings of fact supported by substantial evidence, which means relevant evidence that a reasonable trier of fact could accept as adequate to support the finding. *See Richardson V. Perales,* 402 U.S. 389, 399-401 (1971), *Schmidt v. Apfel,* 201 F.3d 970 (7th Cir. 2000). The Commissioner follows her regulations to reach her conclusions. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008) (establishing a five-step inquiry and establishing the significance of a "yes" or a "no" to each inquiry).

Plaintiff filed for benefits on March 4, 2003, alleging disability as of December 14, 2001. Plaintiff is forty years old now. He had two years of college and, beginning at the age of twenty, he worked for fifteen years before filing for disability benefits. He worked as a service writer for a car dealer, a home security sales consultant, a delivery driver, a waiter, a painter and an auto

parts salesman.  The claim for disability was and is based on narcolepsy and relies on Dr. Jean-Paul Spire's April 14, 2003 report to SSA setting forth a diagnosis of severe narcolepsy.

Narcolepsy[1] was diagnosed by the neurologist (Dr. Spire), who noted complaints of frequent narcoleptic attacks and excessive daytime somnolence.  Plaintiff is aware of when he will fall asleep, and, if driving, will pull to the side of the road before sleeping.  Opinions about Plaintiff's proper diagnosis varied.  Plaintiff had been found by physicians to have ADHD, depression, and anxiety for which he had been given prescription drugs.  In 2003, testing at the University of Chicago Hospitals found results consistent with narcolepsy.  Plaintiff is not one of those persons who, for various reasons, falls asleep spontaneously, sometimes falling over when they do so.

Dr. Spire also said, on June 16, 2003, that "Curt has been a diagnostic dilemma.  He tested negative for narcolepsy in the HLA system [a marker for narcolepsy], but he certainly has symptomatology that would support such a diagnosis.  The best medication, so far, has been Xyrem, and he finds that he sleeps better.  His nocturnal sleep hours are interrupted by care; he has to attend to his paraplegic multiple sclerosis wife."

On February 7, 2005, Dr. Phyllis Zee, a neurologist at Northwestern Memorial Hospital, diagnosed Plaintiff as having "circadian rhythm sleep disorder, delayed sleep-phase syndrome, and hypersomnia with long sleep."  She recommended further testing.

---

[1] A narcoleptic is sleepy during the day even after a good night's sleep.  Narcoleptics can fall asleep at inappropriate times and places.  Their need to sleep becomes physically irresistible.  Diagnosis, in most cases, does not occur until 10 to 15 years after the onset of symptoms.  *See* National Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/narcolepsy/narcolepsy.htm (last visited August 15, 2008).

At the hearing, the ALJ found Plaintiff was not working and had a severe medical impairment but one that did not meet or equal the listed impairments. The ALJ found Plaintiff had the physical capacity to perform medium exertional-level work as long as he avoided heights, dangerous machinery and bodies of water. Thus, the ALJ reasoned Plaintiff could go back to most, if not all, of his prior work. The ALJ, in reaching his decision, disbelieved Plaintiff's testimony on the extent of his physical limitations. The ALJ found the testimony of medical expert, Dr. Barbara Bellar, persuasive. Dr. Bellar rejected narcolepsy as a diagnosis both because of the absence of the customary marker in Plaintiff's blood work and Plaintiff's testimony that he knows ahead of time when he will fall asleep (i.e., he testified that he is able to drive because he has warnings of the sleepiness and pulls over to sleep). Dr. Bellar is not an expert in narcolepsy, and the record supports the proposition that not all narcoleptics have the HLA marker.

The plaintiff argues, at bottom, that whether the sleep phenomenon is caused by narcolepsy or not, the phenomenon exists. Falling asleep on the job does not, in the traditional sense, obliterate the functional capacity to perform work. But, falling asleep on short notice renders Plaintiff unemployable either by others or by himself. Who will hire someone whose work will be regularly and unpredictably interrupted by an irresistible need to sleep? It is for this reason, Plaintiff says, that the ALJ misread Dr. Spire's notation that Plaintiff had "no limitations" on his work. When Plaintiff is conscious, there are "no limitations," but his ability to remain conscious during work days is limited, a finding implicit in the impairment ruling at step two. The vocational expert testified that an individual who dozed off two or three times a day for 15-60 minutes at a time could not do any jobs.

3

The ALJ's credibility finding is entitled to substantial deference; indeed his decision resolving the arguments below is the job of the ALJ. *Dixon v. Massanari,* 270 F.3d 1171, 1178-79 (7th Cir. 2001), *Donahue v. Barnhart,* 279 F.3d 441 (7th Cir. 2002). When deciding that a claimant is not credible, the ALJ must explain how the testimony is inconsistent with medical findings in the record. *Johansen v. Barnhart,* 314 F.3d 283, 287-88 (7th Cir. 2002).

The path to decision taken by the ALJ was marked by several signs:

a. Plaintiff is young, intelligent and healthy looking;

b. A sleep study confirms the excessive daytime sleepiness, but Plaintiff drives and assists his disabled wife;

c. His work history is unusual with low earnings before 1995, no earnings from 1995-98, and earnings of $40,000-50,000 in 2000-01;

d. Plaintiff is self-employed and told Dr. Spire he needed a break on the cost of medications;[2]

e. There are discrepancies between the testimony of Plaintiff's spouse (which the ALJ believed) and Plaintiff's own testimony.[3]

I see shortcomings in the ALJ's reasoning. The only medical testimony referred to was the fact that the sleep study confirms excessive daytime sleepiness. The inconsistency between Plaintiff and his spouse is overstated. He always said he did not spontaneously fall into sleep,

---

[2] The ALJ considered events and claims from a prior filing in 1995, but the records of that proceeding are not part of this administrative record, and I disregard it.

[3] The ALJ may have placed some reliance on the views of the Medical Expert, but the Commissioner does not seek to defend his decision on these grounds; rather the Commissioner asserts that the real basis for the decision was the ALJ's acceptance of Dr. Spire's opinions.

4

that he had some sense of when he was about to sleep. His wife said, "[o]ne minute he'll be talking to me and the next minute, it happens kind of gradually."

The statement that he needed help with the cost of medications is true of virtually all disability claimants and not an appropriate ground to be given special consideration in determining credibility. The emphasis in the ALJ's opinion indicates to me that disproportionate weight was given to "interest" of this claimant. (*See* particularly page 390 of the record.)

The ALJ did not address what is the key issue of work limitation in this matter. The ALJ noted, correctly, that Plaintiff should not work around "unprotected heights, dangerous machinery or open flames and bodies of water." Yet, the key issue here was not the precise nature of the work, but rather the ability to do "sustained work . . . on a regular and continuing basis" which means eight hours a day, for five days a week or an equivalent work schedule. Social Security Ruling 96-8 p; *see Carradine v. Barnhart,* 360 F.3d 751, 754-56 (7th Cir. 2004). The ALJ did not make any finding on the ability to work "on a regular and continuing basis." Nor did the ALJ consider the availability of employers who would employ an individual who cannot stop falling asleep from time to time during his shift.

The ALJ, because he did not consider the ability to complete a regular work day, may well have misread the impact of Dr. Spire's conclusion that there were no limitations on Plaintiff's ability to perform his former work. Dr. Spire's opinion can be read (and, probably, best read) to mean Plaintiff, unlike some disabled persons, has the physical and mental ability to do his former work when he is not asleep and that the disability arises from his inability to keep himself from sleeping on the job.

5

The final decision of the Commissioner cannot stand; but I cannot, on this record, find Plaintiff disabled for purposes of SSDI and SSI. The record is not so clear on this point. The Commissioner could conclude that there is no qualifying disability in this case, but not in the manner he did in this case. On remand, a better focus on the precise question presented here and, perhaps, a better qualified Medical Expert will allow the Commissioner to reach a proper result by a proper decision process.

I grant Plaintiff's motion for summary judgment and remand this matter to the Commissioner of Social Security for further proceedings to determine whether Curt Schwaar is capable of doing his past relevant work, and if not, whether he otherwise is disabled.

ENTER:

James B. Zagel
United States District Judge

DATE: August 15, 2008